UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODOLPH J. LANAGHAN,

        Plaintiff,

v.                                  Case No. 15-C-929

CO KOCH, et al.,

        Defendants.

## DECISION AND ORDER DENYING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Rodolph Lanaghan, currently incarcerated at Fox Lake Correctional Institution, brought this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Officer Koch, Sergeant Chase, Nurse Woomer, Nurse Bowen, and Unknown Health Services Unit Staff violated his Eighth Amendment rights. The events giving rise to Plaintiff's complaint occurred while he was incarcerated at the Oshkosh Correctional Institution (OSCI). Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs and were negligent regarding his severe muscle disease, Dermatomyositis with Polymyositis. The case is before the Court on Defendants Koch, Chase, and Bowen's motion for summary judgment. (ECF No. 38.) Defendant Woomer joined the motion without filing her own memorandum of law. (ECF No. 46-1.) Defendants seek summary judgment on the ground that Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA). For the reasons set forth below, the Court will deny Defendants' motion for summary judgment and instead order a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

## BACKGROUND

In late November 2011, Plaintiff noticed a rash forming on his forehead, back, and abdomen; experienced muscle pain in his back and abdomen; and noticed a lump on his neck. (Pl.'s Prop. Undisputed Facts (PPUF) ¶¶ 3–4, ECF No. 48.) Plaintiff submitted his first request to be seen by OSCI's health services unit (HSU) for his symptoms on November 20, 2011. Plaintiff received treatment on November 21, 2011, but he contends Nurse Woomer indicated she would only see him for his rash. (*Id.* ¶ 9.) Between November 22, 2011 and December 6, 2011, Plaintiff's symptoms worsened. He alleges he was in extreme pain, his entire body was swelling up, his rash and bleeding sores began spreading over his entire body, and he had a large bulge on his back. He required a wheelchair to move around. Plaintiff continued to seek treatment from the staff at HSU during this time.

On December 6, 2011, Plaintiff was taken to the hospital and diagnosed with Dermatomyositis with Polymyositis, an extremely severe muscle disease. He returned to OSCI on December 12, 2011 with treatment instructions. However, when seen at a follow up appointment on December 16, 2011, the specialist noted Plaintiff had difficulty getting out of a chair and was unable to raise his head off his pillow. Shortly thereafter, Plaintiff began using a wheelchair, could not independently perform his daily living activities, and struggled to swallow his own saliva.

Plaintiff believed that he was not receiving proper treatment for his condition at OSCI and sought to file an Offender Complaint. Because of his deteriorating condition, Plaintiff was unable to physically write or type a complaint. He asked a fellow inmate, Audie Draper, to help him file one. On or around December 20, 2011, Draper took Plaintiff to OSCI's "dayroom" to write the complaint but the main tables were occupied by other inmates. Plaintiff claims that he and Draper

asked Sergeant Chase if they could write the complaint at a table in the study room. (*Id.* ¶ 48.) Plaintiff explained to Sergeant Chase that he needed Draper's assistance to write the complaint. (*Id.* ¶ 49.) He alleges that Sergeant Chase denied them access to a table. (*Id.* ¶ 50.) Plaintiff knew that inmates cannot write complaints against a wall or on the floor. As such, he did not attempt to file a complaint that day and returned to his cell. Plaintiff asserts that his condition worsened, and he was unable to ask for assistance to file a complaint before he was rushed back to the hospital on December 28, 2011.

Plaintiff underwent treatment at UW Hospital and Select Specialty Hospital for a total of six weeks. He was subsequently transferred to the Dodge Correctional Institution infirmary for approximately two weeks to perform physical therapy. Plaintiff returned to OSCI without restrictions on March 6, 2012.

Plaintiff filed a prisoner complaint regarding OSCI's alleged improper treatment of his condition on July 2, 2012. (ECF No. 41-2 at 8.) He listed the "Date of Incident or Denial of Request" as "11-20-11 to present (on-going)." (*Id.*) Plaintiff's complaint was rejected on July 10, 2012. (*Id.* at 2.) Plaintiff filed a request for review of the rejected complaint on July 17, 2012, but his request was denied on August 2, 2012. (*Id.* at 5, 11.) Plaintiff filed his complaint in the present action on August 3, 2015, alleging a series of negligent medical acts by numerous medical practitioners.

**ANALYSIS**

Summary judgment is proper if the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must construe the

3

evidence in the light most favorable to the non-moving party. *Ramos v. City of Chicago*, 716 F.3d 1013, 1014 (7th Cir. 2013).

Defendants contend that they are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies. The PLRA provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that a prisoner comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The objective of § 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion," and expects prisoners to adhere to "the specific procedures and deadlines established by the prison's policy." *Dole*, 438 F.3d at 809; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted).

Wisconsin has implemented the Inmate Complaint Review System (ICRS) under which inmate grievances concerning prison conditions or the actions of prison officials are "expeditiously raised, investigated and decided." Wis. Admin. Code § DOC 310.01. Under the ICRS, an inmate must file a complaint with the institutional complaint examiner (ICE) within 14 calendar days after the occurrence giving rise to the complaint, unless good cause exists to excuse a delay. Wis. Admin.

Code § DOC 310.09(6). The ICE has the authority to return, investigate, or recommend a decision to an appropriate reviewing authority. Wis. Admin. Code § DOC 310.07(2)(a)–(c). If a reviewing authority renders a decision, the inmate may appeal that decision to the Corrections Complaint Examiner (CCE) within 10 calendar days. Wis. Admin. Code § DOC 310.13(1). After receiving an appeal, the CCE shall issue a written receipt of the appeal to the inmate within five working days, then recommend a decision to the DOC Secretary, who adopts or rejects the recommendation. Wis. Admin. Code §§ DOC 310.13(4), DOC 310.14(2). The failure to properly exhaust each step of the grievance process constitutes failure to exhaust available administrative remedies. *Pozo*, 286 F.3d at 1025.

Nonetheless, a prisoner's claim is not subject to the PLRA exhaustion requirement when no administrative remedies are "available" to him during the relevant exhaustion period. *Hernandez*, 814 F.3d at 842 (citing 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 93). Prison authorities cannot "immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist." *King v. McCarty*, 781 F.3d 889, 894 (7th Cir. 2015). Exhaustion is an affirmative defense, therefore, the defendants must establish that an administrative remedy was available and that Plaintiff failed to pursue it. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2016). When factual disputes regarding exhaustion exist, the court must resolve those disputes through an evidentiary hearing. *Pavey*, 544 F.3d at 742.

Here, Plaintiff concedes that he did not file an ICRS complaint regarding the treatment he received at his November 11, 2011 HSU appointment until July 2, 2012, but contends that Defendants prevented him from exhausting his remedies by restricting him from receiving assistance to draft his complaint. Pursuant to Wis. Admin. Code § DOC 310.09(7), "[i]f an inmate is unable

5

to write a complaint, the inmate may seek assistance in doing so." Plaintiff claims he was physically incapable of independently filing an ICRS complaint within 14 days of the occurrence. He used a wheelchair, could not perform his activities of daily living, and struggled to swallow his saliva. (PPUF ¶¶ 31–34, ECF No. 48.)

Plaintiff asserts that on or around December 20, 2011, he asked another inmate, Audie Draper, to help file a complaint about the lack of adequate treatment he received for his condition. When Plaintiff and Draper asked Sergeant Chase if they could write the complaint in the study room, Sargent Chase denied them access to a table. Because inmates cannot write complaints against a wall or on the floor, Plaintiff did not attempt to write his complaint that day. Plaintiff asserts that his condition worsened and he was unable to ask for assistance to file an ICRS complaint before he was transferred to the hospital. (*Id.* ¶¶ 45–52.) Defendants dispute that the interaction with Sergeant Chase occurred. (Defs.' Resp. to PPUF ¶¶ 48–50, ECF No. 57.)

Based on the record, Defendants have failed to show that the administrative grievance process was available to Plaintiff and that he simply failed to take advantage of it. The record must be further developed to determine whether prison officials rendered the complaint procedures unavailable to Plaintiff by not lending him assistance in creating a complaint while simultaneously isolating him from other inmates who might have assisted him in filing a complaint. Therefore, the Court denies Defendants' motion for summary judgment. Because genuine issues of material fact exist as to whether Plaintiff exhausted his administrative remedies, and whether there were any institutional barriers to him doing so, the Court will schedule a *Pavey* hearing in this matter.

6

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 38) is **DENIED**. Due to a genuine issue of material fact being present as to whether Plaintiff exhausted his administrative remedies, the Court will schedule a *Pavey* hearing on the matter. The Clerk is directed to set the matter on the Court's calendar for a telephone conference to schedule the required hearing.

**SO ORDERED** this  1st  day of November, 2016.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court